# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01041-NYW

JOSEPH P. LOVATO,

    Plaintiff,

v.

VICKIE NIRA,
KELSEY DILLINGER,
NICOLE ALBRIGHT, and
JEN GOMEZ,

    Defendants.

## ORDER ON MOTION TO DISMISS

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendants Vickie Nira, Kelsey Dillinger, and Nicole Albright's (collectively, "CDOC Defendants") Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and (6) (the "Motion" or "Motion to Dismiss"), filed March 13, 2019. [#29].[1] The court considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes [#27]. The court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, upon review of the Motion and associated briefing, the applicable case law, and being otherwise fully advised, I **DENY** the Motion to Dismiss.

---

[1] On March 14, 2019, the CDOC Defendants filed an Errata regarding their Motion to Dismiss. *See* [#31]. As far as this court can discern, the Errata is an identical copy of the Motion to Dismiss and attached exhibit, except the attached exhibit is now designated as Exhibit A. *Compare* [#29; #29-1] *with* [#31; #31-1]. For consistency and clarity, the court cites to the originally filed Motion to Dismiss [#29].

**BACKGROUND**

The court draws the following facts from the Second Amended Complaint [#13] and presumes they are true for purposes of the instant Motion. Plaintiff Joseph Lovato ("Plaintiff" or "Mr. Lovato") is an inmate currently incarcerated within the Colorado Department of Corrections ("CDOC"). *See generally* [#1; #8; #13]. Prior to his incarceration, doctors diagnosed Mr. Lovato with several medical ailments that require he take up to 12 different medications. *See* [#13 at 5, 8]. Upon his incarceration, Plaintiff's medical file disclosed his medical conditions, his need to take the 12 prescribed medications, and his adverse reactions when missing a dose of his medications. *See* [*id.* at 5-6, 8]. Despite all this, Mr. Lovato alleges the CDOC Defendants neglected to give him his prescribed medications on three occasions and failed to treat his severe symptoms that followed. *See* [*id.* at 5-8].

First, on August 9, 2016, because the medication line was long and he felt himself starting to get sick, Plaintiff approached Defendant Albright and requested his ordered medications ahead of the others in line. *See* [#13 at 16]. Defendant Albright refused to provide Plaintiff his medications and instead directed him to the end of the medication line or back to his cell. *See* [*id.*]. Later that day Mr. Lovato began vomiting and "couldn't stop, so [he] declared a Medical Emergency." [*Id.* at 17]. But when he arrived at "Medical" Defendant Gomez (together with the CDOC Defendants, "Defendants") allegedly refused to treat Mr. Lovato and sent him back to his cell. *See* [*id.*]. Mr. Lovato then declared a second Medical Emergency and presented to Medical; this time Defendant Gomez took Plaintiff's vitals and sent Plaintiff back to his cell still sick. *See* [*id.*]. Mr. Lovato then began vomiting a "blood dark" substance and presented to Medical for a third Medical Emergency. *See* [*id.*].

Second, on August 29, 2016, Mr. Lovato began vomiting and presented to Medical. *See* [#13 at 14]. Defendant Nira, however, ordered Plaintiff to return to his cell without treatment. *See* [*id.*]. Mr. Lovato alleges that he remained sick all night into the next morning, "vomiting up blood and dry heaving[,]" causing severe physical pain and abdominal pain. *See* [*id.*]. According to Plaintiff, Defendant Nira could have treated Plaintiff with a shot (of either Promethazine or a suppository) but chose not to. *See* [*id.*].

Third, on August 30, 2016, because Defendant Nira did not treat his vomiting, Mr. Lovato called his mother to ask that she call the CDOC office in Colorado Springs, Colorado to seek help for Mr. Lovato. *See* [#13 at 15]. According to Mr. Lovato, within 10 minutes of his mother's telephone call, he was called down to Medical and made to wait 45 minutes to an hour in the waiting room while he was dry heaving. *See* [*id.*]. Defendant Dillinger, with Defendant Nira in tow, then approached Mr. Lovato and informed him that "because [he] kept buying hot jalapeno's [sic] and hot sauce, that medical was done helping [him], and they were not going to help [him] anymore." [*Id.*].

Between August 29 and 30, Mr. Lovato alleges Defendants Nira and Dillinger deprived him of necessary medical attention for roughly 32 hours. *See* [#13 at 8]. Further, Mr. Lovato alleges CDOC personnel informed him that Medical would not help him until he was vomiting blood, but then refused to treat him even once he began to do so. *See* [*id.* at 7].

Believing Defendants conduct violated his Eighth Amendment rights, Plaintiff filed his pro se[2] Complaint on April 27, 2017. *See* [#1]. Per the Honorable Gordon P. Gallagher's Orders,

---

[2] Because Mr. Lovato proceeds pro se, this court affords his papers and filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the court cannot and does not act as his advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Plaintiff as to a represented party, *see Murray v. City of*

Plaintiff filed an Amended and Second Amended Complaint.  *See* [#5; #8; #10; #13].  The Honorable Lewis T. Babcock then issued an Order to Dismiss in Part and to Draw Case, dismissing Plaintiff's claims against Defendants Rick Raemisch, Matthew Hansen, and Christopher Ward but drawing Plaintiff's Eighth Amendment claim[3] against Defendants to the undersigned.  *See* [#14].

Pursuant to an amended waiver of service, the CDOC Defendants were to answer or otherwise respond to the Second Amended Complaint on or before February 11, 2019, *see* [#17], but upon their request, the court extended that deadline to March 13, 2019, *see* [#23].  As to Defendant Gomez, the court ordered, and the CDOC Defendants' counsel provided, a last known address for Defendant Gomez on March 20, 2019.  *See* [#32 (filed under Level 2 Restriction)].  The undersigned then directed the United States Marshals Service to attempt service on Defendant Gomez at the provided address.  *See* [#33].  On April 23, 2019, Defendant Gomez's summons was returned unexecuted with the notation that Defendant Gomez did not work at any of the locations were service was attempted.  *See* [#38].  To date, Defendant Gomez has not been served.

The CDOC Defendants filed the instant Motion on March 13, 2019.  *See* [#29].  Following an extension to do so Mr. Lovato filed his Response, and the CDOC Defendants have since filed their Reply.  *See* [#39: #40].  The Motion to Dismiss is now ripe for disposition and I consider the Parties' arguments below.

---

*Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

[3] The Second Amended Complaint purports to assert two distinct Eighth Amendment claims; however, because Plaintiff bases both claims on the same facts alleged, the court interprets the Second Amended Complaint as asserting a single claim for deliberate indifference against Defendants in violation of Mr. Lovato's Eighth Amendment rights.  Further, in his Response, Mr. Lovato appears to argue that he also asserts a First Amendment retaliation claim, *see* [#39 at 9], but such a claim is not apparent from the Second Amended Complaint and thus the court will not consider it.

**LEGAL STANDARDS**

**I.	Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014), even in the absence of a challenge from any party, *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006). Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015). For a facial attack the court takes the allegations in the Complaint as true; for a factual attack the court may not presume the truthfulness of the Complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts. *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012) (citing *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995)). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *See Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).

**II.	Rule 12(b)(6)**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova*

*v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (internal quotation marks omitted). A plaintiff may not rely on mere labels or conclusions, "and a formulistic formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). In doing so, the court may consider materials beyond the complaint <u>only if</u> the documents are central to the plaintiff's claims, referred to in the complaint, and the parties do not dispute their authenticity. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).[4]

## III. Qualified Immunity

The doctrine of qualified immunity protects government officials from individual liability for actions carried out while performing their duties so long as their conduct does not violate clearly established constitutional or statutory rights. *Washington v. Unified Gov't of Wyandotte*

---

[4] The CDOC Defendants request that the court consider their Exhibit attached to the Motion to Dismiss, because it is central to Plaintiff's claim and referred to in his complaint even though Plaintiff does not explicitly attach the document to his Second Amended Complaint or incorporate it by reference. *See* [#29 at 2 n.1, 6; #29-1]. But the Second Amended Complaint does not refer to the document tendered by the CDOC Defendants and the CDOC Defendants have not established its authenticity, and thus I decline to consider the Exhibit for the truth of the matter asserted for purposes of the instant Motion. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (explaining courts may consider matters outside the pleading under Rule 12(b)(6) if the document is "referred to in the complaint," is "central to the plaintiff's claim," and the "parties do not dispute the document['s] authenticity"). Likewise, the court will not consider the exhibits submitted in support of Plaintiff's Response.

*Cty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). To facilitate the efficient administration of public services, the doctrine functions to protect government officials performing discretionary actions and acts as a "shield from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant has asserted a defense of qualified immunity, the burden shifts to the plaintiff who must establish that (1) the defendants violated a constitutional right, and (2) the right was clearly established at the time of the defendants' action. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). Courts, however, have discretion to consider the prongs in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When, as here, a defendant moves to dismiss a plaintiff's § 1983 claim based on qualified immunity, "the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). Mr. Lovato's Fifth Amended Complaint need not contain <u>all</u> the necessary factual allegations to sustain a conclusion that the Defendants violated clearly established law. *See Robbins*, 519 F.3d at 1249 (recognizing that such a heightened pleading standard is not required). The Fifth Amended Complaint needs to satisfy only the minimum pleading requirements as articulated in *Twombly* and discussed above. *Id*.

## ANALYSIS

### I. The Motion to Dismiss

The CDOC Defendants move to dismiss the Second Amended Complaint for three reasons. First, they argue the court lacks subject matter jurisdiction over claims for monetary damages against them because such a claim is really against the CDOC which is immune from suit under

the Eleventh Amendment. Second, qualified immunity shields the CDOC Defendants from this lawsuit. And third, the court should dismiss Plaintiff's requests for injunctive relief and punitive damages. I consider each in turn.

### A. Official Capacity Claims

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This immunity extends to suits by citizens against their own state or its agencies in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). For claims brought pursuant to § 1983, a claim against a state official sued in her official capacity "is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, the Eleventh Amendment bars suits against state officials sued in their official capacities for monetary damages pursuant to § 1983. *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) ("§ 1983 does not abrogate a state's sovereign immunity").

The CDOC Defendants argue the court should dismiss for want of subject matter jurisdiction Mr. Lovato's claim to the extent he seeks monetary damages from the CDOC Defendants in their official capacity. *See* [#29 at 4]. But it is not clear from the Second Amended Complaint whether Mr. Lovato indeed seeks monetary damages from the CDOC Defendants in their official capacity. *See generally* [#13]. And while a plaintiff may not amend his complaint in his response to a Motion to Dismiss, *see In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004), Mr. Lovato clarifies he is seeking monetary damages from the CDOC Defendants in their <u>individual</u> capacities and injunctive relief from the CDOC Defendants in their

8

official capacities. *See* [#39 at 6]. Such relief is not barred by the Eleventh Amendment. *See Johns*, 57 F.3d at 1552 (discussing the well-settled exception to the Eleventh Amendment's general bar is a suit in which a plaintiff seeks to prospectively enjoin a state official from continually violating federal law (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)); *see also Rounds v. Clements*, 495 F. App'x 938, (10th Cir. 2012) (noting, "*Ex parte Young* permits suit against state employees for prospective relief whether the employee happens to be sued in his individual or official capacity") (citation omitted). Thus, the court will interpret the Second Amended Complaint only to seek injunctive, and not monetary, relief against the Defendants in their official capacities, and will **DENY** the Motion to Dismiss in this regard.

### B. Qualified Immunity

The CDOC Defendants next move to dismiss the Second Amended Complaint because qualified immunity shields them from suit. For the following reasons, I respectfully disagree and thus I **DENY** the Motion to Dismiss in this regard.

#### 1. Constitutional Violation

"Failure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs." *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). To establish a prison official's constitutional liability, a plaintiff must satisfy both the objective and subjective components of the deliberate indifference test. *See Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component requires Mr. Lovato to allege a "sufficiently serious" medical need, *see Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005), which may be one that is "so obvious," *see Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999), or one that resulted in substantial harm (i.e., "lifelong handicap, permanent loss, or considerable pain") because of an unreasonable delay

9

in treatment, *see Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001). The subjective component requires Mr. Lovato to establish Defendants Nira, Dillinger, and Albright's culpable states of mind (i.e., that each of these Defendants knew that Plaintiff faced a substantial risk of harm yet disregarded that risk), which may arise when the need for medical treatment is so obvious that any delay or denial in treatment is patently unreasonable. *See Self v. Crum*, 439 F.3d 1227, 1231-33 (10th Cir. 2006) (likening the subjective component to criminal recklessness and explaining that mere negligence is insufficient).

The CDOC Defendants contend Mr. Lovato fails to plead a plausible constitutional violation under the Eighth Amendment. First, they argue he fails to plead Defendant Albright "refused him medication [] or that she disregarded an excessive risk to the inmate's health or safety," and Mr. Lovato fails to plead that any delay in receiving his medication caused "permanent injury or long-term harm," as Plaintiff in fact received his medication on the morning of August 9. *See* [#29 at 6-7; #40 at 3]. Second, the CDOC Defendants argue Mr. Lovato fails to allege Defendant Nira's personal participation in any alleged constitutional violation on August 29, but rather attributes wrongdoing to Defendant Nira because she was the Head Nurse and had access to Plaintiff's medical file. *See* [#29 at 7-8; #40 at 3-4]. Third, and finally, the CDOC Defendants assert Mr. Lovato alleges only "a mere disagreement" with Defendant Dillinger's treatment on August 30, and Mr. Lovato does not allege that any delay in treatment by Defendant Dillinger caused Plaintiff substantial harm. *See* [#29 at 8; #40 at 4]. The CDOC Defendants thus contend Mr. Lovato fails to plead a plausible constitutional violation.

But Plaintiff's Second Amended Complaint and the allegations contained therein (which the court must accept as true for purposes of the instant Motion) plead a plausible constitutional

10

violation. Indeed, I find that Mr. Lovato sufficiently alleges both the objective and subjective components of a deliberate indifference claim.

***Objective Component***. As to the objective component, Mr. Lovato must allege "the delay [in treatment] resulted in substantial harm," which Mr. Lovato may satisfy "by a showing of lifelong handicap, permanent loss, or considerable pain." *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018) (emphasis added) (internal quotation marks omitted). Mr. Lovato satisfies this requirement.

Mr. Lovato alleges he must receive his medications at a certain time or before he eats in the morning or evening, because failure to do so results in Mr. Lovato vomiting until he receives a shot of "Promethazine or Suppository." [#13 at 6]. On August 9, after Defendant Albright refused Plaintiff's request to receive his medications ahead of others in line and ordered Plaintiff back to his cell, Plaintiff alleges he "started throwing up, and couldn't stop, so [he] declared a Medical Emergency." [*Id.* at 17]. On August 29, Plaintiff alleges "[he] got sick and started vomiting" and proceeded to medical only to be ordered to return to his cell without treatment. [#13 at 14]. He continues that he did not receive help throughout the night and was "up all night long vomiting up blood and dry heaving[,]" and a liberal interpretation of the Second Amended Complaint reveals Mr. Lovato attributes this delay to Defendant Nira, *see* [*id.*], which is sufficient to allege her personal participation, *see Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). Finally, on August 30, Plaintiff alleges he went roughly 32 hours without treatment and suffered "a lot of physical pain" and "bad abdominal pain"; was only seen by medical after his mother contacted the CDOC office in Colorado Springs; and waited 45 minutes to an hour in the waiting room only to have Defendant Dillinger inform him that "medical

11

was done helping [him], and they were not going to help [him] anymore"—this being while Defendant Dillinger observed Plaintiff in a wheelchair "still dry heaving from vomiting all night." [*Id.* at 15]. I find this sufficient at this stage to satisfy the objective component of a deliberate indifference claim. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) ("Regardless of the relatively benign cause of Plaintiff's pain, the facts taken in the light most favorable to Plaintiff clearly demonstrate 'significant, as opposed to trivial, suffering.' . . . Plaintiff's pain was so severe that he collapsed, vomited, and believed he was dying. This severe pain and fear of death lasted for several hours, during which Plaintiff was provided with neither the medical treatment that could have reduced his pain nor the medical diagnosis that could have removed his fear of death." (internal citation omitted)); *accord Mallory v. Jones*, No. 10-CV-02564-CMA-KMT, 2011 WL 1750234, at *7 (D. Colo. May 3, 2011) (finding the vomiting of blood an obviously severe medical need).

***Subjective Component***. As to the subjective component, Mr. Lovato must allege Defendants knew of yet disregarded a substantial risk of serious harm, which the court may infer from the severity of his symptoms or Defendants' training. *See Estate of Booker v. Gomez*, 745 F.3d 405, 430-31 (10th Cir. 2014). Mr. Lovato alleges his medical file, which the CDOC Defendants were aware of and/or familiar with, contains information pertaining to his medical ailments, the medications he receives for them, as well as the adverse side effects that may arise if he does not take his medications. *See* [#13 at 6, 7, 8, 9, 14-16]. It is also reasonable to infer that Mr. Lovato presented to the CDOC Defendants displaying the alleged symptoms, including vomiting blood and dry heaving, and thus the CDOC Defendants were aware of the seriousness of Mr. Lovato's symptoms. *See* [*id.* at 14-16]. Plaintiff also alleges the CDOC Defendants acted intentionally. *See* [*id.*]. At this stage, taking the factual allegations as true as the court must, I find

Mr. Lovato alleges Defendants knew of yet disregarded a substantial risk of serious harm. *See Martinez v. Beggs*, 563 F.3d 1082, 1089-90 (10th Cir. 2009) (explaining the subjective component requires the defendants subjectively disregard the claimed harm, which the court may infer from circumstantial evidence or the obviousness of the risk); *see also Redmond v. Crowther*, 882 F.3d 927, 940 (10th Cir. 2018) ("The subjective prong is met if prison officials intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed." (internal brackets and quotation marks omitted)).

### 2. Clearly Established

"For a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (brackets, citation, and internal quotation marks omitted). A plaintiff may satisfy this burden "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Washington*, 847 F.3d at 1197 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted)). But a plaintiff need not provide case law that is factually identical to his case if the constitutional violation is "obviously egregious . . . in light of prevailing constitutional principles," *A.M. v. Holmes*, 830 F.3d 1123, 1135-36 (10th Cir. 2016), and the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has noted that a defendant may be on notice that her conduct violates clearly established law even in novel factual circumstances, *see Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

Drawing on these principles, the Tenth Circuit recently expounded on the parameters of establishing a clearly established right:

13

> A constitutional right is clearly established when a Tenth Circuit precedent is on point, making the constitutional violation apparent. This precedent cannot define the right at a high level of generality. Rather, the precedent must be particularized to the facts. But even when such a precedent exists, subsequent Tenth Circuit cases may conflict with or clarify the earlier precedent, rendering the law unclear.
>
> A precedent is often particularized when it involves materially similar facts. But the precedent may be adequately particularized even if the facts differ, for general precedents may clearly establish the law when the defendant's conduct obviously violates the law. Thus, a right is clearly established when a precedent involves materially similar conduct or applies with obvious clarity to the conduct at issue.
>
> By requiring precedents involving materially similar conduct or obvious applicability, we allow personal liability for public officials only when our precedent puts the constitutional violation beyond debate. Thus, qualified immunity protects all officials except those who are plainly incompetent or those who knowingly violate the law.

*Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (internal brackets, citations, and quotation marks omitted); *see also Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (discussing what constitutes clearly established law). Again, it is Mr. Lovato's burden to allege enough facts (taken as true) that the CDOC Defendants violated his clearly established constitutional rights. *See Dahn v. Amedei*, 867 F.3d 1178, 1185 (10th Cir. 2017).

The CDOC Defendants argue, even if the court finds a constitutional violation, Mr. Lovato fails to allege this constitutional right was clearly established. This is because "Plaintiff points to no clearly established law that would put the Defendants on notice that their conduct was unlawful." [#29 at 10]; *see also* [#40 at 4]. The CDOC Defendants offer nothing further on the issue of whether they violated clearly established constitutional law. Plaintiff offers in his Response that "qualified immunity is only proper where the record does plainly demonstrate no Constitutional right has been Violated [sic] or the allegations do not offer clearly established Law [sic]." [#39 at 7].

It is axiomatic that "the standard for Eighth Amendment medical treatment claims, including delay-in-care claims, has been established for decades." *Vasquez v. Davis*, No. 14-CV-01433-WJM-CBS, 2015 WL 6662921, at *8 (D. Colo. Nov. 2, 2015) (denying qualified immunity at the motion to dismiss phase because the plaintiff adequately alleged that the defendants' failure to treat his Hepatitis-C violated clearly established law). To be sure, the Supreme Court of the United States has consistently warned lower courts not to define the clearly established law "at a high level of generality." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (internal quotation marks omitted). But "[g]eneral statements of the law are not inherently incapable of giving fair and clear warning" of a clearly established constitutional right if the unlawfulness is apparent, and there may be "the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019). "[T]he salient question . . . is whether the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Based on Mr. Lovato's allegations, I find he adequately alleges a violation of his clearly established right to adequate and timely medical assistance under the Eight Amendment. *See Mata*, 427 F.3d at 756 (denying qualified immunity where the defendant refused to provide any medical treatment despite the plaintiff's repeated complaints of severe and lasting pain, informing the plaintiff to wait and raise her complaints in the morning). And Mr. Lovato's failure to direct this court to any Tenth Circuit or Supreme Court precedent identical on all fours to the instant case

is not fatal to his claims at this stage. Thus, I conclude the CDOC Defendants are not entitled to qualified immunity at this stage.[5]

**C.     Damages**

The CDOC Defendants also challenge Plaintiff's requests for injunctive relief and punitive damages. For the following reasons, I **DENY** the Motion to Dismiss in this regard.

First, the CDOC Defendants contend Mr. Lovato cannot obtain injunctive relief against the CDOC Defendants in their individual capacities and, regardless, Mr. Lovato fails to allege the CDOC Defendants have authority to promulgate the policies sought by the injunctive relief. *See* [#29 at 10-11; #40 at 4]. But as discussed, Mr. Lovato clarifies that he seeks injunctive relief from the CDOC Defendants in their <u>official</u> capacities, which is appropriate pursuant to § 1983. Also as discussed, an official capacity suit is essentially a suit against the state and/or its agency, here, the CDOC, and thus the court disagrees that Plaintiff cannot receive the injunctive relief sought from the CDOC Defendants. *See Kentucky*, 473 U.S. at 165; *see also* Fed. R. Civ. P. 65(d)(2)(A)-(C) (binding the Parties; the Parties' officers, agents, servants, employees, and attorneys; as well as "other persons who are in <u>active concert or participation</u> with anyone described in Rule 65(d)(2)(A) or (B)." (emphasis added)).

Second, in their Motion but not Reply, the CDOC Defendants challenge Mr. Lovato's request for punitive damages, because Mr. Lovato "allegations here fail to rise to the level that would warrant punitive damages . . . [and] fail to allege a constitutional violation, much less a violation that warrants the imposition of punitive damages." [#29 at 11]. "Unquestionably, punitive damages are available in § 1983 actions and are to be awarded only when the defendant's

---

[5] But such a finding expresses no opinion as to the merits of Mr. Lovato's claim or whether such claims may survive summary judgment, including based on qualified immunity, or a trial.

conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308 (10th Cir. 2003) (brackets and internal quotation marks omitted). In construing Mr. Lovato's Second Amended Complaint liberally, the court is unpersuaded that dismissal of Plaintiff's demand for punitive damages is appropriate at this juncture. *See Taylor v. Glanz*, No. 09-CV-0744-CVEFHM, 2010 WL 1541634, at *2 (N.D. Okla. Apr. 16, 2010) ("While Taylor may not recover punitive damages against Glanz in his official capacity, her demand for punitive damages against Glanz in his individual capacity is not barred as a matter of law, and she should be permitted to proceed with that aspect of her § 1983 claim.").

## II.     Defendant Gomez

On April 23, 2019, the United States Marshals Service returned an unexecuted summons as to Defendant Gomez, indicating they could not locate Defendant Gomez at the address provided by defense counsel. *See* [#38].[6] But the court's independent research reveals that the address provided by defense counsel comports with the address of Defendant Gomez's employer. To date, Defendant Gomez remains unserved.

Rule 4(m) provides, "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m); *cf.* D.C.COLO.LCivR 41.1 (providing for dismissal with or without prejudice for failure to comply with the Federal Rules of Civil Procedure). And because Plaintiff has named Defendant Gomez since the filing of his initial Complaint, *see* [#1], the 90-days began to run at

---

[6] By this Order, the Clerk of the Court is directed to restrict [#38] as Level 2 Restriction and shall file a redacted version (redacting Defendant Gomez's work address) for public review.

this time, *see Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1148 (10th Cir. 2006) (explaining that the filing of an amended pleading does not re-start the service window for defendants named in the initial pleading). Accordingly, the court **ORDERS** counsel for the CDOC Defendants to provide the last known home address for Defendant Gomez under Level 3 Restriction for use by the United States Marshals for service no later than **August 19, 2019**. **Plaintiff is advised, however, that continued inability to serve Defendant Gomez may result in the court dismissing Defendant Gomez for failure to timely serve under Rule 4(m) of the Federal Rules of Civil Procedure**.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)   The CDOC Defendants' Motion to Dismiss [#29] is **DENIED**; and

(2)   Counsel for the CDOC Defendants shall **FILE** a Notice under Level 3 Restriction reflecting Defendant Gomez's last known home address for the sole purpose of service no later than **August 19, 2019**.

DATED: August 13, 2019                    BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge